## Commonwealth v. Graydon

*Joseph E. Kameen,* for Commonwealth of Pennsylvania.

*Jan S. Lokuta,* for defendant.

THOMSON, *J.,* November 2, 1994—This case is before us on defendant's omnibus pre-trial motion to suppress evidence. Briefs have been submitted and argument has been held on the motion.

The facts are brief and simply put. The defendant, Mark J. Graydon, was involved in a motor vehicle accident on February 12, 1994. The accident occurred when the defendant's truck crossed over the center line of State Route 2006 in Dingman Township, Pike County, Pennsylvania, and collided head-on into a vehicle in the oncoming lane. When state police arrived at the accident scene, the defendant was being treated by ambulance personnel in anticipation of taking defendant to Mercy Hospital in Port Jervis, New York. The state trooper at the scene, Officer Balchune, gave credible testimony at the suppression hearing that defendant exhibited signs of being under the influence of alcohol, including the smell of alcohol on defendant's breath and glassy eyes. The officer reported that the defendant also admitted to drinking "three or four beers." Due to defendant's condition, the officer reported he was

unable to perform field sobriety tests at the scene of the accident. The trooper also credibly testified that he requested that the defendant consent to a blood test for alcohol, and that the defendant in fact gave his consent. Defendant was then transported by ambulance to Mercy Hospital. While at the hospital, blood tests were requested and subsequently taken by hospital staff. Blood specimens were provided to another officer, Trooper Johnson, who forwarded them to Wyoming Regional Laboratory for analysis. The results of the tests showed a blood alcohol level of .15 percent.

Defendant now petitions this court to suppress any and all evidence of blood work or evidence derived from such blood work as was conducted from blood drawn from the defendant at Mercy Hospital, Port Jervis, New York.

In support thereof, the defendant enunciates three bases to support suppression of the evidence: (1) that the investigating officer lacked probable cause to request the drawing of the defendant's blood; (2) that the blood was drawn without the knowing and freely-given consent of the defendant; and (3) that the officer obtained the blood pursuant to a request, tendered to hospital personnel outside the jurisdiction of the police officer.

## PROBABLE CAUSE

In support of his contention that probable cause was lacking, the defendant relies strongly on the cases of *Commonwealth v. Danforth,* 395 Pa. Super. 1, 576 A.2d 1013 (1990), and *Commonwealth v. Kohl,* 532 Pa. 152, 615 A.2d 308 (1992). In his brief, the defendant argues, "... the mere occurrence of an accident, or the mere consumption of alcohol by the suspect will not do. There must be probable cause to belief (sic) the suspect was intoxicated before a blood test can be requested."

Defendant's brief, p. 8. The defendant thereafter cites *Danforth* and *Kohl.* While the defendant's brief properly states the law, this court notes the disjunctive nature of the defendant's contention of a ... "mere occurrence of an accident, *or* the mere consumption of alcohol." *Id.* The facts in the instant case present a conjunctive: there was an accident *and* consumption of alcohol, the latter evidenced by the smell of alcohol on the breath of defendant, an admission to having drunk "three or four beers," as well as glassy eyes. Defendant's reliance on *Danforth* and *Kohl* is therefore insufficient. This court holds that the facts of this case, because of the additional indicia of intoxication, do support a finding of probable cause.

We are confirmed in this opinion by the Superior Court in the case of *Commonwealth v. Haynos,* 363 Pa. Super. 1, 525 A.2d 394 (1987). The material facts in that case are markedly similar. Haynos was involved in a one car accident. When the officer arrived at the accident scene, he ascertained that defendant was the driver and he detected an odor of alcohol on the driver's breath. Because of his numerous duties involving the accident, the officer was unable to perform field sobriety tests, or note any other indicia of intoxication on or about the defendant. *Id.* at 3-4, 525 A.2d at 395. Nevertheless, the Superior Court found "... these facts establish sufficient probable cause...." *Id.* at 11, 525 A.2d at 399.

The defendant suggests in his reply brief that the decisions in *Danforth* and *Kohl* overruled *Haynos* sub silentio.[1] Defendant's reply brief, p. 2. According to defendant's construction of this ancient rule, apparently

---

1. The defendant suggests that other cases relied on by the Commonwealth have also been overturned.

whenever an appellate court, in a ruling, fails to reaffirm a preceding case, that preceding case is overruled by implication because of the "silence" of the court towards it. This is both an error of law and a misapplication of the doctrine of sub silentio.

The Latin maxim sub silentio, is the modern cognate of the classic common law maxim, qui tacet consentit, meaning, literally, "he who remains silent consents." Properly applied, where there is silence on the part of an appellate court to an earlier case, an inferior court is required to construe that silence as consent. As it applies to the case at bar, if the appellate court were silent as to one of the cases cited in the Commonwealth's brief (such as *Haynos*), we would be required to construe their silence as consent to the continued legal vitality of the case. But such consent *favors the Commonwealth, not the defendant.* Because the cases cited by the Commonwealth are still good law, the invocation by defendant of the doctrine of sub silentio serves no useful purpose.

Further eroding defendant's argument, the courts were not entirely silent. Judge Olszewski, in concurrence, wrote to emphasize the limited scope of the court's decision in *Commonwealth v. Danforth, supra* at 23, 576 A.2d 1024. He maintained that if a police officer noticed *any* signs of intoxication at an accident site, probable cause would be met, and a blood test would have been authorized by 75 Pa.C.S. §1547(a)(1). *Id.* at 23, 576 A.2d at 1024. The example the learned judge used to illustrate his principle was none other than *Commonwealth v. Haynos.* Parenthetically, Judge Olszewski notes that in *Haynos* probable cause was based on the existence of an accident and odor of alcohol on the driver's breath. *Id.* Factually, the instant case contains that same indicia in addition to glassy eyes and an

admission of alcohol consumption by the defendant. For the foregoing reasons, we hold that the state police officer had probable cause to request that blood be drawn from the defendant, Mark J. Graydon.

## CONSENT

Defendant argues that "lacking is the required free and voluntary consent to having blood drawn." Defendant's brief, p. 8. Unfortunately for the defendant, this only becomes an issue in the absence of probable cause. Where probable cause is found to exist, Pennsylvania's Implied Consent Law is triggered, and actual consent is no longer required.

It is clear that the taking of a blood sample is a search and seizure within the meaning of the Fourth Amendment of the United States Constitution. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Likewise, the Pennsylvania Supreme Court has held that the administration of a blood test is a search within the meaning of Article I, Section 8 of the Pennsylvania Constitution if performed by an agent of, or at the direction of the government. *PennDOT v. McFarren,* 514 Pa. 411, 417, 525 A.2d 1185, 1188 (1987). "Generally, a search or seizure is not reasonable unless it is conducted pursuant to a search warrant issued by a magistrate upon a showing of probable cause." *Commonwealth v. Kohl, supra* at 166, 615 A.2d at 315.

Furthermore, after reviewing the relevant case law, we find that the search of the defendant was justified under the "implied consent" provision of the Motor Vehicle Code, 75 Pa.C.S. §1547(a)(1), Act of June 17, 1976, P.L. 162, no. 81, §1; as amended December 15, 1982, P.L. 1268, no. 289, §5. This section provides in pertinent part:

"Section 1547. Chemical testing to determine amount of alcohol or controlled substance

"(a) General rule.—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle: (1) while under the influence of alcohol or a controlled substance or both;"

"Reasonable grounds" is not defined in the statute but has been construed to mean probable cause by the Superior Court in *Commonwealth v. Quarles,* 229 Pa. Super. 363, 324 A.2d 452 (1974) (plurality opinion). It has also been held that the implied consent provisions of 75 Pa.C.S. §1547(a)(1) dispense with the need to obtain a warrant. *Commonwealth v. Kohl, supra* at 166, 615 A.2d at 315.

Consequently, under current Pennsylvania law, a warrant is not required, and a defendant is deemed to consent to a blood test, if, at an accident scene, a police officer notices any other signs of intoxication, such as an odor of alcohol, bloodshot eyes, lack of coordination or slurred speech, such that would support a finding of probable cause.

Since the state trooper had probable cause, *supra,* the defendant pursuant to 75 Pa.C.S. §1547(a)(1) is therefore deemed to have consented to the blood test. Consequently, actual consent is unnecessary, and the issue of actual consent, raised by the defendant in his motion to suppress, is immaterial.

## OFFICER'S JURISDICTION

Lastly, defendant argues that there is "absolutely no statutory authority for a police officer to make a request of an individual to submit to a chemical test while outside the territorial limits for (sic) the Commonwealth of Pennsylvania." Defendant's brief, p. 10. However, defendant fails to provide this court with a single reference which supports this contention. In his brief he relies on the cases of *Luzins v. PennDOT,* 128 Pa. Commw. 601, 564 A.2d 289 (1989), and *Commonwealth v. Ristau,* 73 D.&C.2d 342 (1974).

However, those cases are easily distinguished from the case at bar. In those, the police officers made forays into neighboring states for the purpose of arresting the defendants and hauling them back into Pennsylvania for prosecution. Here, the police, in earnest pursuit of an investigation, reasonably delayed an investigatory maneuver, until proper medical treatment had been obtained for the defendant, and then resumed an investigation, which, they knew in advance would take them across state lines. As a general rule, police are usually restricted jurisdictionally to their own municipalities; however, the courts have allowed certain practical and policy exceptions to this general rule. See generally, *Commonwealth v. Merchant,* 385 Pa. Super. 264, 560 A.2d 795 (1989), *alloc. granted,* 525 Pa. 579, 575 A.2d 111 (1990).

We believe that the reasonableness of the officer's conduct under the circumstances and the exigencies of this case warrant such an exception. The defendant was injured and loaded into an ambulance. It would have been improper to demand that a blood test be conducted on site, or that defendant be brought to a processing center for the test. There is no hospital located

in the County of Pike. Mercy Hospital in Port Jervis was the nearest hospital to the accident site. Again, it would have been unreasonable for the officer to request that the defendant be put into additional physical peril by demanding that he be taken to a hospital with a less convenient location so as to effectuate a blood draw.

Were we convinced however, that the officer acted improperly in requesting the blood draw in the State of New York, suppression would still be an improper remedy.

The Supreme Court has said,

"A rule of exclusion is properly employed where the objection goes to the question of the reliability of the challenged evidence ... or reflects intolerable government conduct which is widespread and cannot otherwise be controlled." *Commonwealth v. Musi,* 486 Pa. 102, 115, 404 A.2d 378, 385 (1979).

Elsewhere, our Supreme Court has stated,

"It is only where the violation also implicates fundamental, constitutional concerns, is conducted in bad-faith or has substantially prejudiced the defendant that exclusion *may* be an appropriate remedy." (emphasis added) *Commonwealth v. Mason,* 507 Pa. 396, 406-07, 490 A.2d 421, 426 (1985). Also see, *Commonwealth v. Saul,* 346 Pa. Super. 155, 499 A.2d 358 (1985).

Although these cases deal with the statutory limitation on a police officer acting beyond his geographical area in violation of the Municipal Police Jurisdiction Act, 42 Pa.C.S. §8951 et seq., we believe the reasoning extends as well to state police officers acting outside their jurisdictional boundary, the Commonwealth of Pennsylvania.

The facts in the instant case do not evidence fundamental constitutional concerns, nor was there any evidence of bad faith, and the only prejudice suffered by the defendant was the same prejudice he would have suffered had the investigating officer unyieldingly demanded an immediate blood test, without regard to the defendant's medical needs.

Based on the foregoing, the performance of the blood test in the State of New York cannot be used as a basis for suppressing the blood test result.

## ORDER

And now, November 2, 1994, defendant's motion to suppress results of blood test is hereby denied.